UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 24-CR-253 (JRT/JFD) |
| Plaintiff, | |
| v. | **ORDER**<br>**and** |
| RYAN WAYNE LEWIS, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

This case is before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 for a report and recommendation on Defendant Ryan Wayne Lewis's August 21, 2025 Pretrial Motions, including a Motion for Disclosure of Government's Intent to Use Residual Hearsay Exception (Dkt. No. 56), a Motion to Suppress Evidence Derived from Illegal Search (Dkt. No. 57), a Motion to Strike Enhanced Penalty (Dkt. No. 58), and a Motion for Disclosure of Government's Compliance with *Petite* Policy (Dkt. No. 59). Mr. Lewis is charged with being a Felon (who is also an Armed Career Criminal) in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8), and 924(e). (*See* Indictment, Dkt. No. 1.) The charge arises from an alleged trespass at the Mall of America ("Mall"), where, after Mr. Lewis was detained by Mall security for trespassing, a Bloomington Police Department Officer found a 9mm handgun in a backpack Mr. Lewis had been carrying. (Def's Mem. in Supp. 2, Dkt. No. 73.)

1

I. **Motions Resolved via Order (Dkt. Nos. 56, 58, 59)**

The majority of this order and report discusses Mr. Lewis's Motion to Suppress, which the Court recommends denying on multiple grounds. But first, the Court will address the other three motions, which the Court disposes of via order because they are either nondispositive or not properly before the Court. Mr. Lewis's Motion for Disclosure of Government's Compliance with *Petite* Policy is denied because a violation (assuming that one occurred) of an internal Justice Department policy does not entitle a criminal defendant to relief. The *Petite* Policy is an internal Department of Justice policy that:

> precludes the initiation or continuation of a federal prosecution, following a prior state or federal prosecution based on substantially the same act(s) or transaction(s) unless three substantive prerequisites are satisfied: first, the matter must involve a substantial federal interest; second, the prior prosecution must have left that interest demonstrably unvindicated; and third, applying the same test that is applicable to all federal prosecutions, the government must believe that the defendant's conduct constitutes a federal offense, and that the admissible evidence probably will be sufficient to obtain and sustain a conviction by an unbiased trier of fact. In addition, there is a procedural prerequisite to be satisfied, that is, the prosecution must be approved by the appropriate Assistant Attorney General.

Dept. of Justice, Justice Manual § 9-2.031. Mr. Lewis's Motion seeks "assur[ance] that the Government has complied with that policy," (Hr'g Tr. 49:7–8, Dkt. No. 72), but in the hearing, Mr. Lewis's counsel conceded that "the *Petite* policy does not confer any particularized right on a defendant." (*Id.* at 49:1–3.)

Also at the hearing, the Assistant United States Attorney represented to the Court that "the policy was followed here and a waiver was received prior to initiating prosecution." (*Id.* at 51:17–19.) Accordingly, even though the prosecutor did not need to provide assurances that the policy was followed, they were provided, meaning that the

"assur[ances]" that Mr. Lewis seeks have been provided. Therefore, the motion, in addition to seeking relief that is not available, is also moot.

Even if the motion were not moot, Mr. Lewis has not provided any evidence, nor has he alleged, that the United States has brought these charges in contravention of that policy. (*See* Mot. for Disclosure, Dkt. No. 59.) He has also failed to point the Court to any case law supporting the relief he seeks. In fact, the Policy, which was "promulgated solely for the purpose of internal Department of Justice guidance," (Dept. of Justice, Justice Manual § 9-2.031(6)), confers no substantive rights on a defendant whatsoever. *See United States v. Caceres*, 440 U.S. 741 (1979); *Sullivan v. United States*, 348 U.S. 170 (1954). While the Eighth Circuit has not yet taken up the issue, those circuits which have agree with the Department of Justice's conclusion that "a criminal defendant cannot invoke the Department's policy as a bar to federal prosecution." Dept. of Justice, Justice Manual § 9-2.031(6) (collecting cases).

The remaining two motions present issues that must be raised at or before trial with the trial judge, the Honorable John R. Tunheim, the district judge assigned to this case. The Court therefore denies those two motions without prejudice. Mr. Lewis's Motion for Disclosure of Government's Intent to use Residual Hearsay Exception (Dkt. No. 56) is an issue regarding the evidence to be presented at trial. At this stage in this case, the Court declines to rule on such issues.

Mr. Lewis's Motion to Strike Enhanced Penalty on Eighth Amendment grounds (Dkt. No. 58) is also not properly before this Court. Federal magistrate judges have no authority over sentencing in felony cases such as this one. (*See* 28 U.S.C. §§ 636(a)(4)–

(5), (e)(5).) Accordingly, the Court denies the Motion without prejudice as procedurally improper, making no determination, recommendation, or finding as to its merits.

## II. Mr. Lewis's Motion to Suppress Evidence from Search (Dkt. No. 57)

### A. Factual Background

The firearm which Mr. Lewis is charged with possessing, a 9mm handgun, was found in a backpack he was carrying when he was detained by Mall of America security personnel on April 28, 2024 for criminal trespass. Those security officers suspected Mr. Lewis of violating an order barring him from the Mall. (*See* Gov. Mem. in Opp. 2, Dkt. No. 75.) Mall security held Mr. Lewis in the Mall's East Operations Room and searched his person, but not his backpack, which was left out of Mr. Lewis's reach in the room. (*Id.*) Mall Security then reported their citizen's arrest to the Bloomington Police Department, which dispatched Officers Ian Anderson and Jai Hanson. (*Id.*) Officer Anderson went to the East Operations Room, while Officer Hanson checked police databases for active warrants for Mr. Lewis. That check yielded two active state arrest warrants, issued in Ramsey and Dakota Counties in Minnesota (Hr'g Tr. 33:17–24.) The Bloomington Police officers did not search Mr. Lewis or his property before confirming that the warrants were active, information which triggered a decision to bring Mr. Lewis, in custody, to the Hennepin County Jail[1] to be processed and returned to Ramsey or Dakota counties. (*Id.* at 34:13–19.)  Once that decision was made, Officer Anderson searched Mr. Lewis's

---

[1] Bloomington Police policy is that persons with state arrest warrants should be brought to the Hennepin County Jail, (*See* Hr'g Tr. 44:12–16), and that is where Officer Hanson initially determined to take Mr. Lewis.

backpack and found nothing "of evidentiary value." (*Id*. at 18:25–19:6.) The Court refers to this search as the "Anderson Search."

The decision to transport Mr. Lewis to the Hennepin County Jail required Officer Anderson to bring Mr. Lewis's property, including his backpack, to the Bloomington Police Department substation, where it was to be kept, before returning to transport Mr. Lewis to the Hennepin County Jail.[2] While Officer Anderson brought the backpack to the substation, Officer Hanson went to the East Operations Room to notify Mr. Lewis that he was going to be transported by Officer Anderson to the Hennepin County Jail because of the active warrants for his arrest. (*Id*. at 34:17–35:2.)

After apprising Mr. Lewis that he would be brought to the Hennepin County Jail, Officer Hanson returned to the Bloomington Police substation to document the incident. At that time, because Officer Anderson was preparing to bring Mr. Lewis to the Hennepin County Jail, Officer Hanson conducted what he described as an "inventory search" of the backpack, during which he found the 9mm handgun that is the subject of this motion. (*Id*. at 36:7–15.) He said that even though Officer Anderson had already searched the bag, he did an additional search because he was responsible for documenting the incident. (*Id*. at 42:15–22.) The Court refers to this search as the "Hanson Search." After finding the handgun, Officer Hanson contacted Officer Anderson and told him to return Mr. Lewis to

---

[2] Officer Hanson indicated at the hearing that the Hennepin County Jail does not accept detainees' property when they are transferred to its custody, so Mr. Lewis's property, including his backpack, was to be held by the Bloomington Police. (*See* Hr'g Tr. 36:10–15.)

the Bloomington City Jail because there would be "local charges for having the gun in his possession." (*Id*. at 41:17–25.)

### B. Legal Standards

The Fourth Amendment provides that:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV. The Fourth Amendment proscribes only "unreasonable" searches and seizures. When a search is conducted without the authority of a judicially authorized search warrant, the prosecution has the burden of showing that the search falls into one of several well-recognized exceptions to the Fourth Amendment's warrant clause. *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). "When the government seeks to introduce evidence that was seized during a warrantless search, it bears the burden of showing the need for an exemption from the warrant requirement and that its conduct fell within the bounds of the exception." *United States v. Riedesel*, 987 F.2d 1383, 1388 (8th Cir. 1993). "The exclusionary rule generally prohibits admission of evidence seized during an unlawful search," *United States v. Escudero*, 100 F.4th 964, 968 (8th Cir. 2024).

One well-recognized exception to the warrant requirement is an inventory search, which "allows law enforcement to inventory the contents of a lawfully impounded vehicle without a warrant or probable cause." *United States v. Taylor*, 636 F.3d 461, 464 (8th Cir. 2011). The police inventory the contents of vehicles for three reasons: To protect the

contents from loss, to protect the police from unfounded allegations that the contents have been lost or stolen, and to protect the public from potential danger. *United States v. Smith*, 715 F.3d 1110, 1117 (8th Cir. 2013). An inventory search is not a search for evidence, but evidence that is found while the contents of the vehicle are being catalogued is not subject to suppression if the inventory is conducted according to the policy of the law enforcement agency whose personnel conduct the search. *United States v. Harris*, 795 F.3d 820, 822 (8th Cir. 2015). "The central question in evaluating the propriety of an inventory search is whether, in the totality of the circumstances, the search was reasonable." *United States v. Kennedy*, 427 F.3d 1136, 1143 (8th Cir. 2005). Generally, inventory searches that are "conducted according to standardized police procedures" are reasonable. *Id.* While the first cases on inventory searches involved motor vehicles, the doctrine allowing inventorying of property that is in police custody has now extended beyond vehicles, and now specifically includes bags recovered from arrestees. *See, e.g. Colorado v. Bertine*, 479 U.S. 367, 372 (1987); *United States v. Smith*, 715 F.3d 1110, 1116–18 (8th Cir. 2013).

"[F]ailure to follow standard procedures does not always render an inventory search unreasonable." *United States v. Morris*, 995 F.3d 665, 669 (8th Cir. 2021), because "inventory searches need not be conducted in a totally mechanical, all or nothing fashion." *United States v. Smith*, 715 F.3d 1110, 1117 (8th Cir. 2013) (quoting *United States v. Garreau*, 658 F.3d 864 858 (8th Cir. 2011)). "Even when law enforcement fails to conduct a search according to standardized procedures, this does not mandate the suppression of the evidence discovered as a result of the search." *United States v. Rowland*, 341 F.3d 774, 780 (8th Cir. 2003). "There must be something else; something to suggest the police raised

'the inventory-search banner in an after-the-fact attempt to justify' a simple investigatory search for incriminating evidence." *Id.* (quoting *United States v. Marshall*, 986 F.2d 1171, 1173 (8th Cir. 1993)). That the police had an investigatory motive in carrying out an inventory search will not invalidate the inventory search, so long as it is otherwise valid. *United States v. Evans*, 781 F. 3d 433, 437 (8th Cir. 2015) ("If an impoundment is otherwise valid, an investigatory motive does not prevent police from towing a vehicle and conducting an inventory search ... An investigatory motive does not render an inventory search invalid unless that motive is the officers' sole motivation in carrying out the search."); *United States v. Garner*, 181 F. 3d 988, 991-92 (8th Cir. 1999) (same; collecting cases).

**C. Discussion**

Mr. Lewis argues that both the Anderson Search, which was conducted in the presence of Mr. Lewis in the East Operations Room, and the Hanson Search, which was conducted at the Bloomington Police Department substation, fail to meet the standards of any recognized exception to the warrant requirement and therefore, the fruits of the search of the backpack (namely, the 9mm handgun) must be suppressed.

*1. The Anderson Search and Seizure*

As a preliminary matter, because the Anderson Search turned up nothing there is nothing capable of being suppressed. The backpack and its contents were taken into Bloomington Police custody incident to Mr. Lewis's arrest and anticipated transportation to the Hennepin County Jail, the lawfulness of which Mr. Lewis does not and cannot challenge. He interacted with police, who learned that there were active warrants for his

8

arrest in Dakota and Ramsey Counties. Those warrants, which are also unchallenged by Mr. Lewis, provided probable cause for Mr. Lewis's arrest.

The Court concludes that, while Mr. Lewis's backpack was 'seized' by the officers, as that word is used colloquially, "the warrantless removal of the [backpack] into protective custody cannot be typified as a 'seizure' for Fourth Amendment purposes." *United States v. Lacey*, 530 F.2d 821, 823 (8th Cir. 1976). In *Lacey*, the Eighth Circuit held that currency found in the warranted search of an apartment was lawfully taken into police custody for safekeeping where the apartment could not be locked as a result of the execution of the search warrant. Here, as in *Lacey*, the evidence clearly established that Mr. Lewis's backpack was not held by the officers for evidentiary purposes or as contraband, but for the sole purpose of safekeeping because there was nowhere else immediately available to safely store it. *See id*.

Even if the decision to hold Mr. Lewis's backpack was a seizure for Fourth Amendment purposes, Officers Anderson and Hansen followed Bloomington Police Department policy and their shared understanding of Hennepin County Jail policy in deciding to take Mr. Lewis's backpack from the East Control Room at the Mall. At the hearing, Officer Anderson stated that it was Bloomington Police Department policy to seize, search, and inventory the property of a person arrested at the Mall, and that he had followed the same procedure in previous instances where a person was taken into custody at the Mall. (*See* Hr'g Tr. 19:20–20:14.) He also testified that the actions he and Officer Hanson took on April 28, 2024 were in alignment with that policy. (*Id*. at 20:13–14.)

Officer Anderson also testified that it was the policy of the Hennepin County Jail not to accept large bags or backpacks, and that, if the Bloomington Police Department had not preemptively seized the backpack and kept it in its custody, the Hennepin County Jail would have refused to take the bag and sent it back to the Bloomington Police Department. (*Id.* at 20:15–20.) The understanding of Officers Anderson and Hanson that the backpack could not travel with Mr. Lewis to the Hennepin County Jail, pursuant to Hennepin County Jail policy, meant that seizure of the backpack for safekeeping was the only reasonable option available to them. Accordingly, Officer Anderson's seizure of the backpack, in the totality of the circumstances, was reasonable. *United States v. Kennedy*, 427 F.3d 1136, 1143 (8th Cir. 2005).

The Court need not further analyze the Anderson Search because Officer Anderson did not find the handgun. Concluding (though incorrectly) that the backpack contained nothing of evidentiary value, Officer Anderson correctly sent the backpack to the Bloomington Police substation, where it would be held for safekeeping, pursuant to Bloomington Police Department Policy. (*See Bloomington Police Dep't Manual, Pol'y #129: Prop. and Evid. Pol'y*, Gov. Ex. 5 (Dkt. No. 75-1).

   2. The Hanson Search

The United States contends that the Hanson Search, conducted at the Bloomington Police substation by Officer Hanson, is a valid inventory search and a valid search incident to arrest, two widely recognized exceptions to the general presumption that unwarranted searches are unreasonable. Mr. Lewis argues that the United States cannot meet the requirements of these two standards, resulting in a conclusion that the search was

unreasonable and that the handgun must be suppressed. Because the Court concludes that the search was a valid inventory search, the Court declines the parties' invitation to analyze the search as one incident to arrest because that analysis is unnecessary.

In order for an inventory search to be valid, the search must have been reasonable, viewed in the totality of the circumstances. *United States v. Kennedy*, 427 F.3d 1136, 1143 (8th Cir. 2005). Generally, inventory searches that are "conducted according to standardized police procedures" are reasonable. *Id*. The Court finds that the Hanson Search was a proper and reasonable inventory search because it complied with the *Bloomington Police Department Manual, Policy #129: Property and Evidence Policy*, submitted by the United States as Government Exhibit 5 (Dkt. No. 75-1).[3] Generally, Officer Hanson testified that he followed the standard Bloomington Police Department inventory procedures in his search of the backpack. (Hr'g Tr. 36:7–23.) This testimony, which the

---

[3] The United States did not provide the Court or Mr. Lewis with this policy until filing its post-hearing briefing. This procedure was not good practice and should not be repeated in the future. If the United States plans to argue that a challenged search was lawful under the inventory search exception, and plans to rely on the written policy, even in part, to buttress its argument (as opposed to relying solely on officer testimony about the policy) the policy should be provided to defendants before the hearing and submitted as an exhibit at the hearing. This failure to timely provide the policy did not substantially prejudice Mr. Lewis because the Court finds that the policy was followed here. In closer cases, however, there is potential for significant prejudice if defendants and their counsel do not have fair notice of the relevant inventory policies. Nor is the Court persuaded that the sting of this late disclosure was drawn because the inventory policy is publicly available. Inventory search is an exception to the general rule that searches must be conducted pursuant to warrant, so the burden is on the prosecution to establish that an inventory search that complied with policy took place. It is not the responsibility of defense counsel to locate and scour public records seeking potential justifications for law enforcement's acts.

Court finds to be credible, is sufficient for the Court to conclude that the policies were followed. *See United States v. Petty*, 367 F.3d 1009, 1012 (8th Cir. 2004).

Officer Hanson's testimony is bolstered by the Policy itself, which states "[p]roperty which has been discovered, gathered, received, or collected in connection with departmental responsibilities will be processed in accordance with established departmental procedures." (Gov. Ex. 5 at 3, Dkt. No. 75-1.) The backpack and its contents were collected in connection with departmental responsibilities, as they were seized incident to Mr. Lewis's arrest at the Mall of America pursuant to active arrest warrants, as discussed above. According to the policy, because Officer Hanson had lawfully seized the backpack, he was required to "complete … an examination to verify [its] description, quantity, and location." (*Id*. at 2.) This inventory was necessary because "[a]ll property must be inventoried and placed in secure storage prior to the employee going off-duty," (*id*. at 3), and "[e]vidence should never be left unsecured or unattended and officers should not maintain evidence outside the property room overnight…." (*id*. at 7.)

Finally, even absent an inventory policy shown to have been followed by the searching officer, there must be "something else…to suggest the police raised the inventory-search banner in an after-the-fact attempt to justify a simple investigatory search for incriminating evidence." *See United States v. Lund*, No. 24-CR-317 (MJD/JFD), 2025 WL 2324586, at *4 (D. Minn. May 22, 2025), report and recommendation adopted, 2025 WL 2058140 (D. Minn. July 23, 2025). Here, that "something else" simply does not exist. Mr. Lewis does not allege, nor can the Court conclude from this record, that an inventory search was a *post hoc* rationale for an unscrupulous rummaging through Mr. Lewis's

12

belongings. All of the testimony indicates that Mr. Lewis was never under suspicion of carrying a firearm until after the Hanson Search and that the backpack was taken into custody solely for safekeeping while Mr. Lewis was transferred to the Hennepin County Jail to be processed for his outstanding warrants. A review of the record shows that Officer Hanson was conducting a routine inventory search, pursuant to Bloomington Police Department policy, when he found the handgun. That discovery substantially changed the officers' plans for Mr. Lewis's future detention and the state level firearms charges brought against him.

In sum, Officer Anderson lawfully seized Mr. Lewis's backpack after the decision was made to detain him and transport him to the Hennepin County Jail. Because the officers concluded that the Hennepin County Jail would not accept Mr. Lewis's backpack upon his transfer to Hennepin County custody, the officers lawfully retained that backpack in Bloomington Police Department custody. Bloomington Police Department policy requires that any property held in its custody requires an inventory search to adequately document the held property's contents. In conducting that search, pursuant to Bloomington Police Department policy, Officer Hansen lawfully discovered the 9mm handgun in Mr. Lewis's backpack. Accordingly, that evidence need not be suppressed in the case against Mr. Lewis for unlawful possession of a firearm.

## ORDER

Accordingly, based on all the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1. Mr. Lewis's Motion for Disclosure of the Government's Intent to use Residual Hearsay Exception (Dkt. No. 56) is **DENIED without prejudice** as procedurally improper;

2. Mr. Lewis's Motion to Strike Enhanced Penalty (Dkt. No. 58) is **DENIED without prejudice** as procedurally improper; and

3. Mr. Lewis's Motion for Disclosure of the Government's Compliance with Petite Policy (Dkt. No. 59) is **DENIED**.

## RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Mr. Lewis's Motion to Suppress Evidence (Dkt. No. 57) be **DENIED**.

Dated: December 9, 2025         *s/ John F. Docherty*
                                JOHN F. DOCHERTY
                                United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written

objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).