**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

UNITED STATES OF AMERICA,

Plaintiff,

v.

RYAN WAYNE LEWIS,

Defendant.

Crim. No. 24-253 (JRT/JFD)

**MEMORANDUM OPINION AND ORDER
ADOPTING REPORT AND
RECOMMENDATION AND DENYING
MOTION TO SUPPRESS**

---

William C. Mattessich, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Plaintiff.

Glenn P. Bruder, **MITCHELL, BRUDER & JOHNSON**, 9531 West 78th Street, Suite 210, Eden Prairie, MN 55344, for Defendant.

Ryan Wayne Lewis is charged with being an armed career criminal in possession of a firearm. (Indictment, Sept. 19, 2024, Docket No. 1.) After Lewis was arrested at the Mall of America for an alleged trespass, Bloomington Police Officer Jai Hanson searched his backpack without a warrant and found a handgun. Among Lewis's pretrial motions was a motion to suppress the gun as the product of an unlawful search under the Fourth Amendment. After an evidentiary hearing and supplemental briefing, United States Magistrate Judge John F. Docherty issued a Report and Recommendation (R&R) which, in relevant part, recommended that the Court deny Lewis's motion to suppress because the

search was a lawful inventory search.  (*See* R&R, Dec. 9, 2025, Docket No. 77.)  Lewis

objects to that recommendation.  (Obj. R&R, Jan. 6, 2026, Docket No. 80.)

The Court concludes that Officer Hanson's search of Lewis's backpack was an

inventory search, is not subject to the Fourth Amendment's warrant requirement, and

was reasonable when considering the totality of the circumstances.  The Court will

overrule Lewis's objection, adopt the R&R, and deny Lewis's motion to suppress.

## BACKGROUND

### I.    FACTS

The relevant facts related to Lewis's suppression motion are presented in full in

the R&R, and Lewis's objection does not pertain to the Magistrate Judge's

characterization of those facts.  The Court therefore incorporates them by reference here.

(R&R at 1, 4–6.)

### II.    PROCEDURAL HISTORY

Lewis moved to suppress the firearm discovered in his backpack on August 21,

2025.  (Docket No. 57.)  On October 17, 2025, the Magistrate Judge conducted a hearing

at which evidence was presented on the motion to suppress.  (*See* Docket Nos. 69, 72.)

The parties filed supplemental briefing regarding the motion on November 13, 2025

(Docket No. 73) and December 1, 2025 (Docket No. 75).  The Magistrate Judge issued the

R&R recommending the denial of the motion to suppress on December 9, 2025.  (Docket

No. 77.)  Lewis timely objected to the R&R on January 6, 2025.  (Docket No. 80.)

**DISCUSSION**

**I.    STANDARD OF REVIEW**

After a magistrate judge issues an R&R, a party may "serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1).  "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections."  *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008).  "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to" and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).

**II.    WARRANTLESS SEARCH OF LEWIS'S BACKPACK**

**A.    Fourth Amendment**

Lewis seeks to suppress the handgun discovered in his backpack as the product of an unreasonable search under the Fourth Amendment to the U.S. Constitution.  The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ."  U.S. Const. amend. IV.[1]  "[S]earches conducted outside the judicial process,

---

[1] Lewis challenges the search under only the federal constitution.

-3-

without prior approval by judge or magistrate, **are per se unreasonable** under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (emphasis added) (footnote omitted).  Among these is the exception for inventory searches.  *See, e.g.*, *United States v. Garreau*, 658 F.3d 854 (8th Cir. 2011).[2]

The inventory search exception allows law enforcement to search certain property "lawfully taken into custody, even without a warrant or probable cause to search."  *Id.* at 857.  Closed bags and containers can fall within the inventory search exception.  *See Illinois v. Lafayette*, 462 U.S. 640, 648 (1983).  "The justification" for a warrantless inventory search "does not rest on probable cause, and hence the absence of a warrant is immaterial to the reasonableness of the search."  *Id.* at 643.  "An inventory generally serves three purposes: 'the protection of the . . . owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger.'"  *Garreau*, 658 F.3d at 857 (quoting *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976)).  "Because the police are engaging in their community caretaking function—not their criminal investigatory

---

[2] The United States argues that even if the Court concludes that the search was unlawful, the gun should not be suppressed under the doctrine of inevitable discovery.  *See, e.g.*, *United States v. McManaman*, 673 F.3d 841, 846 (8th Cir. 2012).  The Court takes no position on this question because the Court concludes that the search comported with the inventory search exception to the Fourth Amendment.

function—in meeting these needs, they do not need a warrant or probable cause." *United States v. Taylor*, 636 F.3d 461, 464 (8th Cir. 2011).

"The Government bears the burden of showing that its conduct complied with the inventory search exception to the warrant requirement." *Id.*  The Court must "review the propriety of an inventory search under a totality-of-the-circumstances test." *United States v. Long*, 906 F.3d 720, 725 (8th Cir. 2018).

Generally, inventory searches are "reasonable and constitutional" when "conducted according to standardized police procedures." *Garreau*, 658 F.3d at 857. However, "failure to follow standard procedures does not ineluctably render a search unreasonable." *United States v. Morris*, 995 F.3d 665, 670 (8th Cir. 2021).  "Even if police fail to adhere to standardized procedures, the search is nevertheless reasonable provided it is not a pretext for an investigatory search." *Taylor*, 636 F.3d at 465.  "[T]here must be something else; something to suggest the police raised the inventory-search banner in an after-the-fact attempt to justify a simple investigatory search for incriminating evidence." *Morris*, 995 F.3d at 670 (cleaned up).  In other words, officers may not "raise the inventory-search banner in an after-the-fact attempt to justify what was . . . purely and simply a search for incriminating evidence." *United States v. Marshall*, 986 F.2d 1171, 1175 (8th Cir. 1993).

**B.     Evidence Presented to Support Lawfulness of Search**

The gun in Lewis's backpack was discovered by Officer Jai Hanson, who searched the backpack without a warrant.  Whether the Government has met its burden of proving

that Officer Hanson's falls within the inventory search exception to the warrant requirement is a close question.

The Government presents the following, somewhat convoluted, evidence in support of the search. Officer Hanson found the firearm, which Lewis is charged with possessing, a 9mm handgun, in the backpack Lewis was carrying when he was detained by Mall of America security. (R&R at 5.) Mall security detained Lewis for trespass and initially held him in the Mall's East Operations Room. (*Id.*) Mall Security reported their citizen's arrest to the Bloomington Police Department, which dispatched Officers Ian Anderson and Jai Hanson. (*Id.*) Officer Hanson checked police databases for active warrants for Lewis, and that check yielded two active state arrest warrants. (*Id.*) Because of those active warrants, the decision was made by the Bloomington Police Officers to bring Lewis to Hennepin County Jail. (*See* Tr. of Oct. 17, 2025 Mot. Hearing ("Tr.") at 41:2-3, Docket No. 72.)

At the pretrial hearing before the Magistrate Judge, Officer Hanson testified that he first encountered Lewis's backpack when Officer Ian Anderson brought it to the Bloomington Police substation at the Mall, from the East Operations Room where Lewis

was being held. [3] (Tr. at 34:17–22, Docket No. 72.) Hanson then "did an inventory search on the backpack." (*Id.* at 36:8.) Hanson testified that he performed the search not because Lewis would be detained at the Bloomington Police substation, but rather because "we knew Mr. Lewis would be going to Hennepin County on his active warrants[.]" (*Id.* 36:10–11.) Hanson states that he "did an inventory search of [Lewis's] backpack knowing that Hennepin County does not take backpacks, so anything that is in that backpack, along with the backpack, would be inventoried at the Bloomington Police Station." (*Id.* at 36:10–15.) When asked how he knew that this was the proper procedure, Officer Hanson replied "[p]ast knowledge with Hennepin County Jail and then their policy as well," and stated that this is the typical procedure he follows when booking individuals with active felony warrants. (*Id.* at 36:16–23.) Officer Hanson testified that when an individual is being booked in the Bloomington Police Station, proper procedure is that the person's property "would stay at the Bloomington Police Department in our inventory room," and that if this property included a backpack, "[i]t would be inventoried as well."

---

[3] Officer Anderson had also searched Lewis's backpack. He did not find the gun, and therefore, the lawfulness of Officer Anderson's search is not at issue here. The Court nevertheless is troubled that Officer Anderson's search took place at all—he did not testify that he was inventorying the backpack, and it is doubtful his search was a valid search incident to arrest, given that Lewis had been detained for some time before the search and was handcuffed to a bench fifteen feet away. *See Lafayette*, 462 U.S. at 644 ("We have held that immediately upon arrest an officer may lawfully search the person of an arrestee . . . [and] he may also search the area within the arrestee's immediate control." (citing *United States v. Robinson*, 414 U.S. 218 (1973) and *Chimel v. California*, 395 U.S. 752 (1969))). Moreover, for these same reasons, Officer Hansons's search—like Officer Anderson's—likely was not a valid search incident to arrest.

(*Id.* at 46:7–13.) However, as recounted above, at that point Lewis was not going to be booked at the Bloomington Police Department—he was to be taken to Hennepin County Jail. [4]

At the hearing, the Magistrate Judge questioned Officer Hanson as to whether he relied upon any written policy or procedure in carrying out the inventory search. (*Id.* at 46:17–22.) Officer Hanson stated the Bloomington Police Department did have such a policy. (*Id.*) Although the Government did not present the written policy at the evidentiary hearing, the Magistrate Judge directed them to provide the policy to the Court following the hearing, which they did.[5] (*Id.* at 47:4–25.; *see* Govt.'s Response to Mot. to Suppress ("Response"), Exhibit GX-5 ("Ex. GX-5"), Dec. 1, 2025, Docket No. 75-1 (providing excerpts from the Bloomington Police Department Manual).)

---

[4] The Court therefore observes that Officer Hanson's testimony discussing the proper procedure when an individual is booked at the Bloomington police station is not helpful, given Officer Hanson's testimony that prior to the discovery of the gun, he believed that Lewis was **not** going to be detained at Bloomington, but rather the Hennepin County jail. The relevant inquiry here is whether Officer Hanson followed the Bloomington Police Department's standard procedure for when the Bloomington Police Department arrests an individual who is going to be detained elsewhere, but the Bloomington Police Department will be retaining custody of that person's property.

[5] At the hearing, the Magistrate Judge rightfully expressed concern that the Government failed to provide the written policy at the hearing. (*See* Tr. 47:18–25 ("I'm a bit conflicted about asking for [the policy to be submitted after the hearing]. I sort of feel like the motions hearing should rise or fall on what the lawyers do[.]")). However, Lewis did not object to the Magistrate Judge's consideration of the written policy submitted after the hearing.

Bloomington Police Department Policy 129, in relevant part, states that "[p]roperty which has been discovered, gathered, received, or collected in connection with departmental responsibilities will be processed in accordance with established departmental procedures." (Ex. GX-5 at 2.) Under the heading "Property Inventory Procedure" the policy states that "[a]ll property must be inventoried and placed in secure storage prior to the employee going off-duty. Employees inventorying property shall observe the guidelines found in the property room procedure manual." (*Id.*)[6]

The Government also provided—again, **after** the evidentiary hearing—certain excerpts from the Hennepin County Sheriff's Office Policy Manual. (Response, Exhibit GX-6 ("Ex. GX-6.") Dec. 1, 2025, Docket No. 75-2.) The Government asserts that these excerpts demonstrate that the Hennepin County Jail would not have been able to store Lewis's backpack. The Hennepin County manual states that any property taken into custody from an arrestee cannot exceed "an amount easily stored in a single [jail] garment bag." (Ex. GX-6 at 2.) However, the Government did not provide evidence of whether Lewis's backpack would have fit in a Hennepin County jail garment bag, and, more relevantly, did not provide any evidence of a Bloomington Police Department standard

---

[6] The Government did not provide the "property room procedure manual," referenced in Policy 129. Policy 129 itself also makes no mention of the procedure for inventorying backpacks, nor does it set forth any sort of policy for what Bloomington police officers are to do with backpacks belonging to individuals who will be detained at another police station.

procedure under which Bloomington officers would inventory and store backpacks obtained from an individual who would be booked and detained at Hennepin County jail.

At the hearing, the Government also offered as evidence the Police Report compiled by Officer Anderson and Officer Hanson after Lewis's arrest. (*See* Resp. at 1–2 (listing exhibits).) In the police report, Officer Hanson described the search as follows:

> Lewis also had two warrants for his arrest. . . . Both warrants were confirmed through Bloomington Police Department (BPD) Dispatch.
>
> While searching Lewis' personal property, I located a 9mm Taurus Armas G2C handgun in the center pocket of his backpack. The handgun had a magazine inserted into the gun with eight rounds in it and no round in the chamber. I ran the serial number through dispatch which advised it checked clear.

(Ex. GX-1 at 3.) Also relevant is Officer Anderson's report, which stated:

> Mall security had arrested a male, identified as Ryan Wayne Lewis, for being on an active trespass.
>
> Checks showed Lewis had active warrants for his arrest.
>
> Officer Hanson advised during a search incident to arrest, he located a gun inside Lewis's backpack. . . .
>
> Items listed below were property inventoried at the police department:
>
> - Black and silver G2C 9mm handgun (item #1)- inventoried wearing latex gloves.
> - Magazine and eight bullets belonging to item #1 (item #2).
> - Backpack with miscellaneous personal belongings (item #3).

(*Id.* at 3–4.)

C.     Lewis's Objection to the R&R

The Magistrate Judge concluded that the Government had met its burden of demonstrating that the search was a lawful inventory search.  The R&R stated that "Officer Hanson testified that he followed the standard Bloomington Police Department inventory procedures in his search of the backpack," and that "[t]his testimony, which the Court finds to be credible, is sufficient for the Court to conclude that the policies were followed."  (R&R at 11–12.)  The R&R also found that "Officer Hanson's testimony is bolstered by the Policy itself."  (*Id.* at 12.)  Finally, the R&R concluded:

> Mr. Lewis does not allege, nor can the Court conclude from this record, that an inventory search was a *post hoc* rationale for an unscrupulous rummaging through Mr. Lewis's belongings.  All of the testimony indicates that Mr. Lewis was never under suspicion of carrying a firearm until after [Hanson searched the backpack] and that the backpack was taken into custody solely for safekeeping while Mr. Lewis was transferred to the Hennepin County Jail[.]

(*Id.* at 12–13.)

Lewis offers two central arguments in support of his objection to the R&R.  First, Lewis argues that the written policies provided by the Government provide no authorization for Officer Hanson's search.  (Def.'s Obj. to R&R ("Obj.") at 5–8, Jan. 6, 2026, Docket No. 80.)  Lewis states "Section 129[] simply does not require that police officers open the contents of a sealed container, such as a backpack, and conduct an inventory search of its contents."  (*Id.* at 7.)  Second, Lewis rejects the R&R's statement that "Mr. Lewis does not allege . . . that an inventory search was a post hoc rationale for unscrupulous rummaging through Mr. Lewis' belongings."  (*Id.* (quoting R&R at 12–13).)

-11-

Lewis urges that he did argue, and continues to argue, that Officer Hanson had an investigatory motive:

> Although Officer Hanson contended that he was conducting an inventory search to safeguard property, the government never bothered to produce that inventory or the receipt which should, presumably, been delivered to [Lewis]. Fortunately, Officer Anderson's report . . . contains an inventory of sorts. That summary describes the gun and magazine in detail but the remaining items purportedly being inventoried for safeguarding purposes are described merely as 'backpack with miscellaneous personal belongings.' As in *Taylor*, this ethereal description reveals the true nature of the officer's endeavor. Both Hanson and Anderson were searching for contraband[.]

(*Id.* at 7–8.)

### D.    Analysis

The Court concludes that the Government—narrowly—met its burden to demonstrate that the search falls within the inventory search exception.

Officer Hanson testified that he searched Lewis's backpack to inventory its contents, "knowing that Hennepin County" (where, at that point, Lewis was being taken) "does not take backpacks, so anything that is in that backpack, along with the backpack, would be inventoried at the Bloomington Police Station." (Tr. at 36:10–15.) Officer Hanson testified that he conducted the search based on "[p]ast knowledge with Hennepin County Jail and then their policy as well," and that this is the procedure he has followed in previous similar situations. (*Id.*at 36:17–23.) The Magistrate Judge expressly found Officer Hanson's testimony to be credible, and Lewis makes no assertion that Officer Hanson's testimony was not credible. (R&R at 11–12.)

-12-

Although the portions of Bloomington Police Department Policy 129 and the Hennepin County Sheriff's Office Policy Manual submitted by the Government do not expressly authorize the search Officer Hanson conducted, relevant Eighth Circuit precedent indicates that even if the Government had failed to produce a written policy entirely, this alone does not preclude a finding that the search fell within the inventory search exception. *See United States v. Petty*, 367 F.3d 1009, 1012 (8th Cir. 2004) (noting that "testimony can be sufficient to establish police procedures").   Where the Government presents evidence of an inventory search, the Court's inquiry is whether "in the totality of the circumstances, the search was reasonable."  *See United States v. Kennedy*, 427 F.3d 1136, 1143 (8th Cir. 2005).  And "[r]equiring an officer to conduct an inventory search pursuant to 'standardized criteria' or an 'established routine' does not mean that the search must be made in a 'totally mechanical' fashion."  *Id.*

Moreover "[e]ven if police fail to adhere to standardized procedures, [an inventory] search is nevertheless reasonable provided it is not a pretext for an investigatory search."  *Taylor*, 636 F.3d at 465.  "'Something else must be present to suggest that the police were engaging in their criminal investigatory function, not their caretaking function," in conducting the inventory search.  *Id.* (cleaned up).  As the "something else" in this case, Lewis points to the report filed by Officer Anderson in which he lists the objects inventoried by Officer Hanson—Officer Anderson describes the gun

and ammunition in detail but describes the rest as merely a "[b]ackpack with miscellaneous personal belongings." (*See* GX-1 at 4.)

"[L]aw enforcement's failure to record property" pursuant to an inventory search can indeed support the conclusion that an "inventory search was pretextual." *United States v. Rowland*, 341 F.3d 774, 781 (8th Cir. 2003). In this case, the Government's failure to present any evidence that Officer Hanson actually inventoried and recorded the contents of Lewis's backpack calls into question whether Officer Hanson was indeed acting to "[protect the] owner's property while it remains in police custody," or "[protect] the police against claims or disputes over lost or stolen property"—which are two of the key rationales which allow inventory searches to exist outside the scope of the Fourth Amendment's warrant requirement. *Garreau*, 658 F.3d 857. These same concerns were present in *Rowland* where the officer testified "he only recorded items he considered potential evidence," 341 F.3d at 781, and also in *Taylor*, in which officers specifically listed cocaine found in the defendant's vehicle, but "did not itemize or list" the remaining contents, including writing "misc. tools" to categorize hundreds of tools, 636 F.3d at 463.

However, in both *Taylor* and *Rowland*, "something else" was present beyond concerns relating to the recording of inventoried property which led the Court to conclude that the inventory search was pretextual. In *Taylor*, the "something else" was the officer's testimony that "the basis for the traffic stop, the arrest, the towing of the vehicle, and the inventory search was the officer's belief that Taylor had narcotics in his

-14-

vehicle." *Id.* at 465.  And in *Rowland*, the "something else" was that officers had brought a drug-sniffing dog to the scene and had "repeatedly asked Rowland whether there was contraband in the vehicle," leading the Eighth Circuit to conclude that "[c]learly, therefore, police had an investigative motive." *Rowland*, 341 F.3d at 780.

The Court finds no additional evidence of investigatory motive in this case.  Beyond the failure to make proper record of the contents of the backpack, Lewis points to no evidence to demonstrate that Officer Hanson's testimony that the search was an inventory search conducted pursuant to department procedures was merely a post hoc rationale to mask a search for contraband.  For example, there is no evidence that Officer Hanson, or Officer Anderson, ever questioned Lewis about the backpack or expressed a belief that Lewis's backpack would contain contraband.  The Court is somewhat troubled by the varying descriptions of the search over time—in his report, Officer Hanson merely describes the search as a "search [of] Lewis's personal property;" Officer Anderson's report describes it as a "search incident to arrest;" and Officer Hanson testified at one point that he conducted the search because it "was my call, I'm doing the report on it, I searched the backpack." (GX-1 at 3; Tr. at 42:19–20.) But this does not rebut the evidence put forward in the testimony offered by the Government that this search was conducted according to standard caretaking practice, and not for an investigatory purpose.

The Court concludes by again stressing that the Government bears the burden to demonstrate that an inventory search falls outside the Fourth Amendment's warrant

-15-

requirement.  Additional evidence from the Government on the key questions in this case would have been helpful.  For example, the Government could have presented testimony from Bloomington or Hennepin County officials verifying that Officer Hanson followed standard procedure regarding the handling of property belonging to prisoners transferred between the two departments.  Relatedly, it is unclear based on Officer Hanson's testimony whether, at the time of the search, his intent was to store the backpack at the Bloomington Police Department's Mall of America substation, or at the Bloomington Police Department's main station—if the latter, Officer Hanson's decision to perform an inventory search at the Mall substation appears irregular, and additional testimony could have clarified that it was indeed the proper protocol.  The Government narrowly met that burden in this case only because the Court found no evidence that Officer Hanson's reliance on the inventory search exception was pretextual.

### CONCLUSION

The Court finds that Officer Hanson's search was a lawful inventory search, and will therefore overrule Lewis's objection, adopt the R&R, and deny the motion to suppress.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  The Report and Recommendation (Docket No. [77]) is **ADOPTED**.

-16-

-17-

2. Defendant Ryan Wayne Lewis's Objections to the Report and Recommendation (Docket No. [80]) are **OVERRULED**.

3. Lewis's Motion to Suppress Evidence Derived from Illegal Search (Docket No. [57]) is **DENIED**.

DATED: March 16, 2026           \_\_\_\_\_/s/ John R. Tunheim\_\_\_\_\_
at Minneapolis, Minnesota.              JOHN R. TUNHEIM
                                 United States District Judge